UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| **Keri Womack, individually, on Behalf of all wrongful death Beneficiaries, and as the heir and Representative of the Estate of Sawyer Letcher,** § § § § § § | | |
| *Plaintiff,* § | | |
| § | **Cause No. 3:19-cv-000001** | |
| **v.** § | | |
| § | | |
| **University of Texas Medical Branch and Texas Department of Criminal Justice,** § § § | | |
| *Defendants*. § | | |

**Defendants' Joint Reply in Support of Motion to Transfer Venue**

The Texas Department of Criminal Justice (TDCJ) and The University of Texas Medical Branch at Galveston (UTMB) jointly file this reply in support of their motion for transfer of venue to the Eastern District of Texas, Tyler Division.

**Reply**

**I.   Deference Need Not be Given to Plaintiff's Choice of Venue, 414 miles from her Home, Where the Chosen Forum Has No Factual Nexus to the Case.**

The Fifth Circuit has clearly stated that a plaintiff's choice of forum is a factor to be considered, but that in and of itself this factor is neither conclusive nor determinative. *In re Horseshoe Entertainment*; 305 F.3d 354, 359 (5th Cir. 2002) (citing *Garner v. Wolfinbarger*, 433 F.2d 117, 119 (5th Cir. 1970)) (emphasis added). The general rule that the plaintiff's choice of forum is not to be disturbed does not obtain where it is clearly outweighed by other factors. *Mizell v. Prism Computer Corp.*, 27 F.Supp.2d 708, 713 (S.D.

Miss. 1998) (citing *Howell v. Tanner*, 650 F.2d 610, 616 (5th Cir. 1981)). Where the plaintiff's chosen forum has no factual nexus to the case, that choice carries little significance if other factors weigh in favor of transfer. *Hanby v. Shell Oil Co.*, 144 F.Supp.2d 673, 677 (E.D.Tex. 2001) (citing *Robertson v. Kiamichi R.R. Co.*, 42 F.Supp.2d at 656 (E.D.Tex. 1999)) (emphasis added). And even where a plaintiff's choice of forum is factually justified, this Court gives that choice "*close scrutiny*" where, like in this case, the plaintiff does not live within the Division of the Court. *Dearing v. Sigma Chem. Co.*, 1 F.Supp.2d 660, 665 (S.D.Tex. 1998) (citing *United Sonics, Inc. v. Shock*, 661 F.Supp. 681, 682–83 (W.D.Tex. 1986)) (emphasis added).

Plaintiff is incorrect that her choice of venue 414 miles from her own home should be given deference in this case. As explained further in the proceeding sections, Plaintiff does not identify key witnesses located in the Southern District nor, more importantly, why the Southern District is factually justified in this case where the primary events complained of all occurred at the Hodge Unit in the Eastern District.

**II.    Plaintiff's Proposed Grounds for Denying Defendants' Motion to Transfer Venue are Meritless and Effectively Subjects this Court to all Inmate Litigation Within this State.**

Plaintiff's first of the two primary reasons she presents as to why Defendants' Motion should be denied is that Defendants' policymakers reside in the Southern District. ECF No. 22:3-4, 10-11. As stated in Defendants' motion, Plaintiff has not brought a claim that either UTMB or TDCJ's policies were deficient or otherwise flawed. *See* ECF No. 1. Plaintiff's Response does not cite to her complaint in rebuttal to this argument. Indeed, "policy" or "policies" is not mentioned a single time in Plaintiff's complaint, much less

referenced anywhere in the statement of facts. *See id*. And the word "policymaker" is stated exactly three times: once each for both UTMB and TDCJ to assert venue is proper because these agencies' policymakers reside in the Southern District and once to state TDCJ policymakers contract with UTMB policymakers in Galveston and Huntsville to provide medical and psychiatric care to TDCJ inmates. *Id*. at ¶¶11, 12, 59.

It is important to note that whether the state agency failed to make reasonable accommodations for the disabled plaintiff is one factor that is generally always considered in a suit under the ADA/RA. *See, e.g., McCoy v. Tex. Dept. of Crim. Justice*, 2006 WL 2331055 (S.D.Tex. 2006). A claim that a state agency denied reasonable accommodations logically involves, at a minimum, some discussion of policies in place at the time; particularly in suits involving TDCJ or UTMB. And even though this is the case, the overwhelming amount of case law in which an offender sues for an ADA/RA violation it can be readily seen that the proper venue is the TDCJ unit where the events took place. *Hinojosa v. Livingston*, 994 F. Supp. 2d 840, 841 (S.D.Tex. 2014) (ADA/RA claims brought by Plaintiff's counsel in Southern District for events occurring at the Garza West Unit in Beeville, Texas); *Nottingham v. Richardson*, 499 Fed. Appx. 368, 370 (5th Cir. 2012) (ADA/RA claims brought in Northern District for events occurring in Randall County Jail); *McCoy v. Texas Dept. of Criminal Justice*, C.A.C 05 370, 2006 WL 2331055, at *1 (S.D. Tex. Aug. 9, 2006) (ADA/RA claims brought in Southern District for events occurring at the McConnell Unit in Beeville, Texas); *O'Neil v. Texas Dept. of Criminal Justice*, 804 F. Supp. 2d 532 (N.D. Tex. 2011) (ADA/RA claims brought in Northern District for events occurring at the Jordan Unit in Pampa, Texas); *Back v. Texas Dep't of*

*Criminal Justice Institutional Div.*, 684 Fed. Appx. 356, 358 (5th Cir. 2017) (ADA/RA claims brought in Western District for events occurring at the Hughes Unit in Gatesville, Texas); *Shaw v. TDCJ-CID*, 540 F. Supp. 2d 834, 835 (S.D. Tex. 2008) (ADA/RA claims brought in Southern District for events occurring at the Estelle Unit in Huntsville, Texas); *Norman v. TDCJ-ID*, CIV.A. 6:06CV403, 2007 WL 3037129, at *1 (E.D. Tex. Oct. 18, 2007), aff'd sub nom. *Norman v. Texas Dept. of Criminal Justice, Institutional Div.*, 293 Fed. Appx. 285 (5th Cir. 2008) (ADA/RA claims brought in Eastern District for events occurring at the Beto Unit in Tennessee Colony, Texas); *Hall v. Thomas*, 190 F.3d 693, 695 (5th Cir. 1999) (ADA/RA claims brought in Southern District for events occurring at the Harris County Jail in Houston, Texas); *Brown v. Wilson*, 5:10-CV-181-C, 2012 WL 6719464, at *1 (N.D. Tex. Dec. 27, 2012) (ADA/RA claims brought in Northern District for events occurring at the Montford Unit in Lubbock, Texas); *Malley v. TDCJ-ID*, 6:06CV507, 2007 WL 9747586, at *1 (E.D. Tex. Sept. 18, 2007) (ADA/RA claims brought in Eastern District for events occurring at the Beto Unit in Tennessee Colony, Texas).[1]

This Court should grant Defendants' Motion in keeping with relevant case law because, Plaintiff's complaint makes very clear that her ADA/RA claim arises solely from the treatment her son received from individuals at the Hodge Unit.[2] In fact, under Section

---

[1] This is not an exhaustive list of cases.
[2] Defendants have not found any case law that supports the claim that the State can permanently confine persons in inpatient psychiatric treatment facilities, particularly where the patients are noted as doing "very well" with "significant improvement." ECF No. 1 at ¶35. Texas' Mental Health Code does not appear to permit placing persons in inpatient psychiatric facilities without periodic reviews of the propriety of their placement in such a setting or, more importantly, permitting them to leave. *See* Tex. Health & Safety Code Ann. § 572.003 ("a person voluntarily admitted to an inpatient mental health facility under this chapter has the right: (1) to be reviewed periodically to determine the person's need for continued inpatient treatment"); *see also* Tex. Health & Safety Code Ann. § 572.004 (A voluntary patient is entitled to leave an inpatient

IV of her complaint, entitled "Causes of Action" Plaintiff provides the following bases for her ADA/RA claim:[3]

> 51) The **Hodge Unit** is a facility, and its operation comprises a program and service, for Rehabilitation Act and ADA purposes.
>
> 52) The incarceration [at the **Hodge Unit**], safe housing [at the **Hodge Unit**], the DDP [at the **Hodge Unit**], "crisis management [at Skyview next to the **Hodge Unit**]," inpatient psychiatric care [at Skyview next to the **Hodge Unit**], and "constant and direct observation [on May 26, 2017 at the **Hodge Unit**]," among other things, are programs and services TDCJ and UTMB provided to people.
>
> […][4]
>
> 56) TDCJ denied Sawyer the reasonable accommodations of:
> i. "constant direct observation" [just prior to his death on May 26, 2017 while at the **Hodge Unit**] when he was known to be acutely suicidal and awaiting admission to an inpatient psychiatric facility;
> ii. confiscation of his bedding and other materials [just prior to his death on May 26, 2017 while at the **Hodge Unit**] just that could be used to make a ligature;
> iii. assignment to a multi-person cell, [just prior to his death on May 26, 2017 while at the **Hodge Unit**] where a cellmate could alert officers that Sawyer was beginning to hang himself [at the **Hodge Unit**]; and,
>
> 57) UTMB denied Sawyer the reasonable accommodations of:
> i. permanent admission to an inpatient psychiatric facility[, Skyview, which is next to the **Hodge Unit**]; and,
> ii. emergency admission to "crisis management" [at Skyview, which is next to the **Hodge Unit**] when

---

mental health facility in accordance with this section after a written request for discharge is filed with the facility administrator or the administrator's designee).

[3] References to the Hodge Unit are placed in brackets based on a reasonable understanding of the statement of facts immediately preceding this section of the complaint wherein Plaintiff outlines each one of these bases for her ADA/RA cause of action in greater detail.

[4] These paragraphs provide generalized statements as to how TDCJ violated the different factors under the ADA/RA.

> UTMB providers determined Sawyer needed immediate, temporary inpatient care.
>
> 58) In the alternative, if UTMB did not inform TDCJ about Sawyer's emergent condition and need for reasonable accommodations on May 25, 2017 [while at the **Hodge Unit**], then UTMB also denied Sawyer the reasonable accommodation of instructing TDCJ to safely house Sawyer [in the **Hodge Unit**] and provide "constant and direct observation [just prior to his death on May 26, 2017 while at the **Hodge Unit**]."

ECF No. 1:9-11. Plaintiff's complaint not only does not support any contention that policymakers, or their policies, are of central importance in this case, it directly belies such a contention; every single basis Plaintiff alleges her ADA and RA claim is built on is for an event that occurred in, or next door to, the Hodge Unit. *Id.*

The fact that the events giving rise to this suit all occurred in the Eastern District is the reason that Plaintiff's second primary basis for denying transfer—that hard copies of Mr. Letcher's relevant records are kept in Huntsville and Galveston—should also be found unpersuasive. ECF No. 22:11-12. This is because, like Defendants' policies, Defendants' record keeping is also not at issue in this case. Moreover, this Court has held that when a case, like this one, is governed by the general venue statute, 28 U.S.C. § 1391(b), "[t]he location of documentary records is not mentioned in the venue statute and **is irrelevant to determining whether venue is proper in the first instance**." *Severance v. Patterson*, CV H-06-2467, 2006 WL 8438466, at *5 (S.D. Tex. Nov. 28, 2006) (emphasis added). Thus, in addition to being a non-basis for Plaintiff's suit, the location of records is immaterial to this Court's determination of which venue is proper.

In addition to failing to create a factual nexus between this Court and the case,

Plaintiff's claim that policymakers and the location of records should permit venue choice in the Southern District, regardless of where the Plaintiff resides or the events of the case took place, should be even more unpersuasive when considered in the greater context of inmate litigation in the State of Texas. Hundreds of inmates filed suit against TDCJ, UTMB and/or their personnel in 2018 alone. If venue in the Southern District is appropriate on Plaintiff's proposed grounds—when the actions an inmate complains of can be connected, even tenuously, to a policy decision or because all inmates' physical records are located in the Southern District—this Court will be the proper venue for all inmate litigation in the State of Texas. This is why the determination for proper venue is whether the chosen forum has a factual nexus to the case, rather than the location of policymakers and paperwork.

**III. Key Witnesses Are Located in Cherokee County Where all the Events Complained of Took Place.**

Plaintiff denies to this Court that the witnesses listed in Defendants' motion to transfer venue are key to this case and, in rebuttal, names 34 others who she claims are more critical to her ADA/RA claim.[5] Plaintiff's "key" witnesses have no bearing or personal knowledge relevant to this case. Moreover, the actual witnesses to the events giving rise to this suit, which occurred at the Hodge Unit in May 2017, all reside in Cherokee County.

---

[5] In addition to these 34 witnesses, Plaintiff also argues that she intends to retain an expert witness who will likely have to fly in from another location and can more easily do so by flying into Hobby Airport and driving the 42 miles to Galveston, Texas. ECF No. 1:16-17. This Court has stated "[t]he convenience of expert witnesses weighs little in the [venue] analysis." *Houston Trial Reports, Inc. v. LRP Publications, Inc.*, 85 F. Supp. 2d 663, 669 (S.D. Tex. 1999). Even if it did play any part in the consideration of proper venue, Tyler, Texas has the Tyler Pounds Regional Airport with commercial flights daily; it is 15 minutes from the federal courthouse.

### A. Plaintiff's Witnesses are Immaterial to this Case Involving Events that Took Place at the Hodge Unit in 2017.

While Plaintiff lists the location of each of her "key" witnesses, her explanations of who these witnesses are do not indicate, in any way, why these persons would have knowledge of the events that occurred at the Hodge Unit in May 2017 that led to Mr. Letcher's death and form the basis of her complaint. *See* ECF No. 1 at ¶¶56-57. Plaintiff does not cite to any portion of her complaint when explaining who these witnesses are or what facts they may have knowledge of relevant to this case. *Id*. Indeed, as most, of the listed witnesses either never interacted with Mr. Letcher or saw him at times irrelevant to the complaint, it is almost certain that the majority of these witnesses will never be called to testify in this case.

Plaintiff first names TDCJ and UTMB policymakers and supervisors,[6] none of whom have been alleged to have been involved in the events leading up to Mr. Letcher's death or are thought to have any knowledge of the events themselves. ECF No. 22:13-14. As shown above in section II, Plaintiff's ADA/RA cause of action is not premised on deficient or improperly-applied policy. Plaintiff does not explain what testimony is needed from any of these people to prove her claims.

Plaintiff also names a number of LVN, RNs, and other medical professionals that treated[7] Mr. Letcher at other prisons, over a year prior to his death, for issues including

---

[6] The names provided are: 1. Dr. Owen Murray; 2. Dr. Joseph Penn; 3. Dr. Lannette Linthicum; 4. Bryan Collier; 5. Lorie Davis; 6. Karen Hall. ECF No. 22:13-14.
[7] Although Plaintiff claims the RNs and LVNs "treated" Mr. Letcher for mental health issues, that is not something LVNs or RNs are statutorily allowed to do. Tex. Occ. Code § 301.002(2)(G), (5); Tex. Occ. Code § 157.0512(a); *Thayer v. Adams*, 364 Fed. Appx. 883, 891 (5th Cir. 2010).

mental health.[8] *Id.* at p. 14-15. There is no dispute in this case, as known by Plaintiff who has the records that TDCJ and UTMB disclosed, that Mr. Letcher had mental health issues or suicidal ideations, so such testimony, particularly redundant testimony, will be unnecessary. And Plaintiff's complaint does not even mention another unit, other than Hodge Unit, much less allege that the treatment Mr. Letcher received at other units prior to Hodge was ever deficient. *See* ECF No. 1. Instead, Plaintiff makes clear that the primary events complained of as violating Mr. Letcher's rights under the ADA or RA occurred at Hodge. *See id.* Plaintiff also names medical professionals who performed an autopsy on Mr. Letcher,[9] however, Plaintiff makes no claim that there is any dispute over how Mr. Letcher died. *Id.* at p. 15.

Plaintiff also names four people who are the custodian of records for the documents provided to Plaintiff in this case.[10] *Id.* Again, aside from naming who they are, Plaintiff does not explain what testimony she requires from personnel who recently gathered records in this case. As previously stated, Plaintiff's ADA and RA claims do not arise from an incident involving paperwork. Moreover, Plaintiff fails to explain why persons who merely compiled records in a location unrelated to the events of this case in March of 2018 would have personal knowledge of the events giving rise to this suit that occurred at the Hodge

---

[8] The names provided are: (1) Evelyn Skutca, LVN; (2) Jean Clark, PA; (3) Carol Payne, LVN; (4) Annette Woodfork, RN; (5) Etha Harris, MHC; (6) Dr. Michael Ang-Rabanes, M.D.; (7) Deborah Bendit, LVN; (8) Tammy Souter, RN; (9) Brenda York, LVN; (10) Rhonda Samora, LVN; (11) Solly Mathew, RN; (12) Philip Farley, MD; (13) Jairo Salazar, LPC; (14) Anie Tomy, LVN; (15) Sherly Aduparyil, RN; and (16) Juliette George, Psy.D. *Id.* at p. 14-15. Also named is Cecilia Horton, RN, who was a TDCJ Health Services Liaison with seemingly no connection or involvement to Letcher and his care.
[9] These names are: (1) Dr. Judith Aronson, M.D.; (2) Dr. Robert Johnston, D.O. *Id.* at p. 15.
[10] These names are: (1) Sarah Wright; (2) Diane Dorward; (3) Lisa Lopez; (4) Jill Lewis. As explain further in fn. 12, Lewis is the only witness the parties agree may have personal knowledge relevant to this case.

Unit in May 2017. To be sure, they would have none.

Interestingly, Plaintiff also names several people who she asserts to have been involved in housing decisions that would have impacted Mr. Letcher.[11] *Id*. at p. 13. Noticeably missing from Plaintiff's list, however, are people who were directly involved in Mr. Letcher's housing placement at times significant to Plaintiff's complaint. As disclosed to Plaintiff on March 22, 2019 and seen in **Exhibit A**, there are several people who were involved in housing decisions for Mr. Letcher on May 25 and 26, 2017—the day before and day of Mr. Letcher's death. *See* ECF No. 1 at ¶¶56-57 (Plaintiff framing the bases of her ADA/RA claim as Mr. Letcher being denied reasonable accommodations in a number of ways on May 25-26, 2017). As seen in Exhibit A, those persons are identified by initials. Plaintiff's counsel, acknowledging their importance and claiming the information was directly relevant to the motion to transfer, contacted Defendants' counsel specifically to ensure those names were provided before their Response was filed.[12] *See* **Exhibit B**. The names - Assistant Warden Keith January, Captain Charles Bristow, Lt.

---

[11] These names are (1) Phyllis McWhorter, R.N.; (2) Cecilia Horton; (3) Joni White, R.N. *Id*. at p. 13. McWhorter was a witness in *Keith Cole, et al. v. Bryan Collier, et al.*, a class action seeking air-conditioning at the Pack Unit. Other than being a manager for TDCJ Health Services Liaison with a Huntsville phone number during 2012, Plaintiff wholly fails to state how McWhorter was personally involved in Letcher's care. Plaintiff also names Cecilia Horton as the current TDCJ Health Services Liaison. The referenced exhibits do not support this identification; Plaintiff's Exhibit 1 does not have a page 12, nor does Exhibit 2 reference Horton. Regardless, like McWhorter, Plaintiff fails to state how Horton had any personal involvement with Letcher's care. And besides naming Joni White as a manager with classification, Plaintiff does not state how she was personally involved in Letcher's housing assignment. Merely naming individuals from discovery in other cases involving TDCJ and UTMB—that are completely unrelated to Letcher's death—does not support that venue is proper in the Southern District for this case.

[12] Although Plaintiff's counsel originally stated he need all persons involved in any housing decisions of Mr. Letcher, counsel met and conferred on the issue on March 27, 2019 and agreed that the only dates relevant to this suit would be May 25 and May 26. Thus, defense counsel offered to find the names for personnel listed by initial on those dates (*see* Ex. A) and provide them to Plaintiff; Plaintiff's counsel agreed. *See* Ex. C.

Leslie Adams, Warden Robert Stevens, and Major Joe Gonzales – were thereafter sent to Plaintiff's counsel and defense counsel informed them that these persons were located in the Eastern District. *See* **Exhibit C**. As these witnesses were listed as key witnesses in Defendants' Motion, it appeared from Plaintiff's counsel's letter that all parties agreed these witnesses were necessary to this case.[13] ECF No. 18:7. However, these people were never identified as key witnesses anywhere in Plaintiff's Response filed only two days later. It seems unlikely these witnesses would not be important but the witnesses Plaintiff identified, who were far more tenuously involved, or not at all, in Mr. Letcher's housing, would be.

### B. Key Witnesses Reside in Cherokee County.

In addition to the witnesses Plaintiff previously acknowledged as key to this case—Assistant Warden Keith January, Captain Charles Bristow, Lt Leslie Adams, Warden Robert Stevens, and Major Joe Gonzales—the other witnesses that reside in Cherokee County or nearby are those that may have personal knowledge of the events that give rise to Plaintiff's ADA and RA cause of action. The witnesses Defendants listed in their Motion were disclosed to Plaintiff and relevant records to her claim were provided to her prior to her filing a Response to Defendants' motion. Nonetheless, Plaintiff appears to represent that Defendants' key witnesses are not, in fact, key to her case. As was discussed in Defendants' motion, and as can be seen in the documents Plaintiff possesses, these

---

[13] Aside from Major Joe Gonzalez, who will be added to the list of witness in TDCJ's supplemental disclosures. As relayed to Plaintiff on March 28, 2019, Major Joe Gonzales works at the Coffield Unit. *See* Exhibit C.

witnesses are key for the reason that they all worked and were present during the events leading up to, and during the immediate aftermath of, Mr. Letcher's suicide. Specifically, these witnesses may have the following personal knowledge and involvement:[14]

1. **Warden William Jones** (Rusk, Texas) is the current Sr. Warden at Hodge and would be aware of procedures on the unit.
2. **Sgt. Joel Monroe** (Rusk, Texas) responded to the cell on May 26, 2017 and witnessed Mr. Letcher being lowered to the floor and subsequently relieved SGT Sloan on chest compressions.
3. **Asst. Warden Keith January** (Rusk, Texas) was the asst. warden at the time of Mr. Letcher's death.
4. **CO Robert Brown** (Rusk, Texas) was conducting security rounds on May 26, 2017 and giving out cold water when he observed Sawyer Letcher hanging in his cell. CO Wilfredo Balderas was with him at the time.
5. **CO Wilfredo Balderas** (Rusk, Texas) was with Robert Brown when he found Mr. Letcher hanging. He also observed Mr. Letcher reading a book at his desk approximately 15 minutes prior to being found hanging.
6. **CO James Dawson** (Rusk, Texas) was involved in the EAC report from Mr. Letcher's suicide attempt on May 24th and 25th immediately preceding Mr. Letcher's May 26th death.
7. **Sgt. Danny Brown** (Rusk, Texas) called for incident command system when he was told by CO Robert Brown that Mr. Letcher was hanging. He also entered the cell with SGT. Sloan and CO Balderas. He cut the sheet with trauma shears while SGT. Sloan and CO Balderas held Mr. Letcher up.
8. **Lt. Leslie Adams** (Rusk, Texas) signed off on housing changes in the classification records in days before incident.
9. **Lt. Steven Sloan (then SGT.)** (Palestine, Texas) responded to the cell and assisted with cutting Mr. Letcher down. Sloan began chest compressions while SGT. Brown began rescue breaths.
10. **Charles Bristow** (Colorado City, Texas) was the captain on duty when death occurred and notified OIG of the death. Appears to have prepared the EAC report and he is listed as the incident commander. He responded to the cell on the day of the incident.
11. **CO Dennis Hughes** (Rusk, Texas) was involved in the report regarding the death of Mr. Letcher.

---

[14] This is not an exhaustive list. It also does not include the two witnesses - Tracy Hall and Jill Lewis - that were in Defendants' Motion only because these were the only witnesses that Plaintiff appears to agree may be key witnesses; they are also the only witnesses Defendants named that are in the Southern District. Unlike the other witnesses in TDCJ's list, however, Hall and Lewis were not involved in any of the events leading up to Mr. Letcher's death that Plaintiff primarily complaint about. Hall and Lewis were administrative personnel and were involved in the investigation occurring after Mr. Letcher's death.

12. **Chuck Edmonson, RN**, responded to the ICS for Letcher's hanging. He remains employed by UTMB at the Skyview Unit.
13. **Mary C. Tennison, RN,** responded to the ICS for Letcher's hanging. She remains employed by UTMB at the Skyview Unit.
14. **Kenneth Bain, LVN** conducted Solitary/Prehearing Flow rounds on May 25, 2017 at 3:00pm and noted Letcher was alert and oriented to person, place, and time; and that his appearance, behavior, and verbalization were appropriate to situation. Mr. Bain is currently employed by UTMB at the Coffield Unit located in Tennessee Colony.
15. **Anita M. Watson, RN,** responded to the ICS for Letcher's hanging. She remains employed by UTMB at the Skyview Unit.
16. **Donna G. Stebbins, RN** responded to the ISC for Letcher's hanging. She remains employed by UTMB at the Skyview Unit.
17. **Mary M. Hunter, LVN** responded to the ICS for Letcher's hanging. She remains employed by UTMB at the Skyview Unit.
18. **Paul A. Germany, MA, MHC,** saw and spoke with Letcher on the morning of May 26, 2017, about 6 hours before he committed suicide. He also spoke with Letcher on May 25, 2017, and noted Letcher was suicidal and treated at the local emergency room. He remains employed by UTMB at the Hodge Unit.
19. **Tamesha A. Heard, LVN,** interacted with Letcher on May 25, 2017, when Letcher refused to take his mental health medications. She remains employed by UTMB at the B. Moore Unit in Overton, Texas.
20. **Caroyln J. Pyle, RN,** responded to Letcher's suicide attempt on May 24, 2017 and sent him to the local emergency room. She remains employed by UTMB at the Skyview Unit.
21. **David C. Davis, PhD,** provided mental health treatment at the Skyview Unit in the weeks leading up to Letcher's suicide. He remains employed by UTMB at the Hodge Unit.
22. **Val W. Bass, MS, LPC,** is the program director for DDP, and is employed at the Hodge Unit. He will provide testimony regarding Letcher's placement and treatment in DDP at the Hodge Unit.
23. **Frank A. Leonard, MD,** is a provider at the Skyview Unit and treated Letcher in the weeks before his suicide. On May 26, 2017 when Letcher was found hanging, he ordered the responding nurses to suspend the standard delegating order and immediately transfer via EMS to local emergency department.

As Plaintiff is well aware, these witnesses are, indeed, the key witnesses in this case that may have personal knowledge of the actual claims made in Plaintiff's complaint.[15] As

---

[15] Although Plaintiff takes issue with the amount of detail Defendants provided in their original Motion as to the significance of these witnesses, this supplemental detail in the present Reply brief should be

cited above in section II, Plaintiff specifically alleges the ways in which she believes UTMB and TDCJ failed to accommodate Mr. Letcher in the days prior to his death at the Hodge Unit. *See* ECF No. 1 at ¶¶56-57. Thus, it is a near certainty Plaintiff will seek to depose more of Defendants' listed witnesses than her own in order to determine how much evidence there is of those allegations that form the basis of her ADA/RA suit. *See id.* Moreover, should this case stay in the Southern District, these witnesses will be outside the Southern District's subpoena power for deposition under Fed. R. Civ. P. 45(c)(3)(A)(ii), and any trial subpoenas for these witnesses to travel more than 100 miles would be subject to motions to quash under Fed.R.Civ. P. 45(c)(3). *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 316 (5th Cir. 2008) ("The second private interest factor is the availability of compulsory process to secure the attendance of witnesses.").

## Conclusion

Ultimately, venue is proper in the "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C.A. § 1391. Plaintiff has brought suit against Defendants for that events that occurred in Rusk, Texas. Therefore, Defendants respectfully request this case be transferred to the appropriate venue: the Eastern District of Texas, Tyler Division.

Respectfully submitted.

---

sufficient, and appropriate, for this Court to make a determination as to whether these are the true key witnesses in this case. *See* Section 3851 Standard in Considering Transfer—Convenience and Location of Witnesses, 15 Fed. Prac. & Proc. Juris. § 3851 (4th ed.); *see also Chesapeake Operating, Inc. v. Stratco Operating Co., Inc.*, 2007 WL 788166, *4 (W.D. Tex. 2007) ("Although the Defendant initially failed to sustain its burden of proof by specifically identifying the key witnesses to be called in this case, Defendant's Reply Brief sufficiently identifies the key witnesses in this case and summarizes their expected testimony.").

**KEN PAXTON**
Attorney General of Texas

**JEFFREY C. MATEER**
First Assistant Attorney General

**DARREN L. MCCARTY**
Deputy Attorney General for Civil Litigation

**SHANNA MOLINARE**
Assistant Attorney General
Chief, Law Enforcement Defense Division

/s/ *Adam Fellows*
**ADAM FELLOWS**
Assistant Attorney General
Texas State Bar No. 24002080
Southern District ID. 3109855
Adam.Fellows@oag.texas.gov
**ATTORNEY-IN-CHARGE FOR TDCJ**

/s/ *Heather Rhea*
**HEATHER RHEA**
Assistant Attorney General
Texas State Bar No. 24057611
Southern District ID. 2399979
Heather.Rhea@oag.texas.gov
**ATTORNEY-IN-CHARGE FOR UTMB**

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548
Austin, Texas 78711-2548
(512) 463-2080 / Fax (512) 457-4654

## Notice of Electronic Filing

I, **ADAM FELLOWS**, Assistant Attorney General of Texas, certify that I have electronically submitted for filing, a true copy of the foregoing **Reply in Support of Defendants' Joint Motion to Transfer Venue** in accordance with the Electronic Case Files System of the Southern District of Texas, on April 5, 2019.

/s/ *Adam Fellows*
**ADAM FELLOWS**

Assistant Attorney General

## Certificate of Service

I, **ADAM FELLOWS**, Assistant Attorney General of Texas, certify that a true copy of the foregoing has been served on all counsel of record via CM/ECF on April 5, 2019, as authorized by Fed. R. Civ. P. 5(b)(2) and in accordance with the electronic case filing procedures of the United States District Court for the Southern District of Texas.

/s/ *Adam Fellows*
**ADAM FELLOWS**
Assistant Attorney General